UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

THOMAS A.,                              )
                                        )
           *Plaintiff*                  )
                                        )
v.                                      )    No. 1:17-cv-00307-JHR
                                        )
NANCY A. BERRYHILL,                     )
*Acting Commissioner of Social Security,* )
                                        )
           *Defendant*                  )

## *MEMORANDUM DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in evaluating his fatigue associated with multiple sclerosis ("MS") and in failing to provide good reasons for discounting certain opinions of treating physician Sally Kirkpatrick, M.D. *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 13) at 2-9. I agree that the ALJ failed to provide good reasons for discounting Dr. Kirkpatrick's opinion that the plaintiff required unscheduled work breaks as a result of his muscle weakness and chronic fatigue. On that basis, I vacate the commissioner's decision and remand

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 25.

1

this case for further proceedings consistent herewith. I need not and do not reach the plaintiff's remaining points of error.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2018, Finding 1, Record at 22; that he had the severe impairment of MS, relapsing-remitting type, Finding 3, *id*.; that he had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he was limited to occasionally climbing stairs, ladders, ramps, ropes, and scaffolds, could occasionally balance, stoop, kneel, crouch, and crawl, could frequently reach in all directions, could not handle constantly, could not frequently finger objects smaller than a quarter, and had to avoid moderate exposure to high heat and vibratory tools, Finding 5, *id*. at 25; that, considering his age (43 years old, defined as a younger individual, on his alleged disability onset date, October 22, 2013), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 29; and that he, therefore, had not been disabled from October 22, 2013, through the date of the decision, May 9, 2016, Finding 11, *id*. at 30-31. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must

be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

Dr. Kirkpatrick submitted two opinions in support of the plaintiff's applications for disability benefits, one of which was a Multiple Sclerosis Medical Source Statement ("MSS") dated November 19, 2014. *See* Record at 373-76; *see also id*. at 377.

In her MSS, Dr. Kirkpatrick indicated, in relevant part, that (i) the plaintiff complained "of a type of fatigue that is best described as lassitude rather than fatigue of motor function[,]" (ii) "this kind of fatigue complaint is typical of M.S. patients[,]" (iii) the plaintiff would sometimes need to take unscheduled breaks during a work day at unknown intervals, and (iv) the plaintiff's impairments were likely to produce good days and bad days. *Id*. at 374-76. She attributed the plaintiff's need for unscheduled breaks to muscle weakness and chronic fatigue. *See id*. at 375.

In summarizing the medical evidence of record, the ALJ noted:

In August 2013, the medical record indicated that fatigue was the main concern and problem for the [plaintiff]. The [plaintiff] continued to experience fatigue and weakness in April 2014, and was also reporting electrical shock type symptoms shooting into his legs and arms without accompanying weakness. However, when [Dr. Kirkpatrick] performed a physical exam it was mainly unremarkable. . . . After her examination, Dr. Kirkpatrick noted that fatigue seemed to be the factor most affecting [the plaintiff's] life. She noted that his relaps[ing]-remitting MS was

3

currently stable. Dr. Kirkpatrick reiterated her opinion that his MS was probably stable in October 2014. As a treating provider, I have given great weight to this opinion. She had the opportunity to perform a comprehensive examination, and had an understanding of the longitude [sic] of the [plaintiff]'s treatment. Her opinion is consistent with her physical examination as well as with the [plaintiff]'s ongoing subjective complaints of fatigue. Accordingly, I have given it great weight.

The [plaintiff] continued to report fatigue, and in April 2014 Dr. Kirkpatrick noted that he was flushed and appeared chronically ill. She also noted that there was an irregular postural tremor of his right arm and hand. At this time she wrote a note indicating that the weakness and tremor of his hands leads to trouble using tools. I have given great weight to this opinion. As previously noted, Dr. Kirkpatrick is a treating physician. Her opinion is based on her personal examination, and is consistent with the [plaintiff's] allegations of hand tremors and weakness.

*Id*. at 26-27 (citations omitted).

The ALJ stated that, "[o]n the basis of the [plaintiff]'s fatigue and muscle pain due to his MS, I have limited him to light exertional level with only occasional climbing of stairs, ladders, ramps, ropes and scaffolds" as well as only occasional balancing, stooping, kneeling, crouching, and crawling. *Id*. at 27.

Turning to the opinion evidence, the ALJ indicated that she had given Dr. Kirkpatrick's November 2014 MSS "partial weight[,]" explaining:

Dr. Kirkpatrick is a treating provider with an understanding of the [plaintiff]'s ongoing symptoms and limitations. Her opinions were generally consistent with her treatment records. However, her opinion that he would need unscheduled breaks due to muscle weakness and fatigue is not supported by the medical evidence. The [plaintiff] is able to walk up to two miles. He is able to climb stairs. In limiting him to the light exertional level with additional postural limitations, I have taken into consideration his muscle weakness and fatigue.

*Id*. at 28.

The plaintiff argues, *inter alia*, that the ALJ erred in failing to supply good reasons for rejecting Dr. Kirkpatrick's opinion that the plaintiff needed unscheduled breaks. *See* Statement of Errors at 11-13. I agree.

4

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[2] When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See id.* §§ 404.1527(c), 416.927(c).[3] An ALJ may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for doing so. *See, e.g., id.* §§ 404.1527(c)(2), 416.927(c)(2) ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] a [claimant's] treating source's medical opinion.")

Here, the ALJ articulated three reasons for rejecting Dr. Kirkpatrick's medical opinion that the plaintiff's MS-related symptoms of muscle weakness and chronic fatigue would require him to take unscheduled breaks: that (i) the limitation was not supported by the medical evidence, (ii) the plaintiff could walk up to two miles, and (iii) the plaintiff could climb stairs. *See* Record at 28.

The ALJ failed to explain how Dr. Kirkpatrick's opinion that the plaintiff would need unscheduled breaks was inconsistent with the medical evidence, and nothing in her general discussion of that evidence fills the gap. To the contrary, the ALJ noted that the plaintiff had repeatedly complained of fatigue, that, in August 2013, "the medical record indicated that fatigue

---

[2] I quote from the regulations in effect at the time of the issuance of the ALJ's decision. Those regulations were superseded as to claims filed on or after March 27, 2017, by 20 C.F.R. §§ 404.1520c and 416.920c, pursuant to which the commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c, 416.920c.

[3] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.*, adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.*, whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant or others. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

5

was the [plaintiff's] main concern and problem[,]" and that "Dr. Kirkpatrick noted that fatigue seemed to be the factor most affecting [the plaintiff's] life." *Id*. at 26-27.

As the commissioner acknowledges, the ALJ gave great weight to Dr. Kirkpatrick's statement that fatigue was the factor most affecting the plaintiff's quality of life, deeming it "consistent with Plaintiff's unremarkable physical examination and . . . ongoing subjective complaints of fatigue." Defendant's Opposition to Plaintiff's Statement of Specific Errors ("Opposition") (ECF No. 23) at 6 (citations omitted); *see also* Record at 26-27.

Moreover, the ALJ stated, in the context of discussing the opinion of an agency examining consultant, that the plaintiff's "ongoing fatigue and difficulty handling are consistently noted in the medical records[,]" and she gave "some weight" to a May 1, 2014, opinion of the plaintiff's former employer that, "with [the plaintiff's] deteriorating eyesight and lack of strength and stability[,]" he "would be a risk on the job." *Id*. at 28. Of note, the employer had reported that the plaintiff "began to work only 6-8 hours a day and then began only coming into work 3-4 days a week." *Id*.[4]

In sum, nothing in the ALJ's discussion of the longitudinal medical evidence of record explains how a need for unscheduled breaks is inconsistent with that evidence, which includes ongoing, well-documented complaints of chronic fatigue that she credited.

The ALJ further failed to explain how the plaintiff's ability to walk for up to two miles or climb stairs undermined Dr. Kirkpatrick's assessment of a need for unscheduled breaks. As before, the purported inconsistency is not self-evident.[5] While those restrictions might be inconsistent

---

[4] The ALJ explained that she gave the employer's opinion only "some weight" because, while "[t]he medical evidence support[ed] a finding that the [plaintiff] would have difficulty maintaining a job at [the medium to heavy] exertional level" – the level at which the former job had been performed – she had limited him to light work. Record at 28-29. However, the ALJ's error in assessing the Kirkpatrick opinion calls into question her conclusion that her limitation to light work adequately accounted for the plaintiff's chronic fatigue and muscle weakness.

[5] The plaintiff testified that he could climb a single flight of stairs, *see* Record at 76, and that weather and his MS symptoms affected whether he walked in any given day and how far, *see id*. at 78-80. He testified that, when he

with a need for breaks stemming from muscle weakness, Dr. Kirkpatrick also identified "[c]hronic fatigue" as a reason for that assessed limitation, explaining that the plaintiff had complained "of a type of fatigue that is best described as lassitude rather than fatigue of motor function" and that "this kind of fatigue complaint [is] typical of M.S. patients[.]" *Id*. at 374-75.

The commissioner defends the ALJ's handling of Dr. Kirkpatrick's opinion primarily on the basis that Dr. Kirkpatrick failed to identify any record support for her assessment of a need for unscheduled breaks, asserting that nothing in the treatment record supports "extreme lassitude fatigue." Opposition at 8-9 (internal quotation marks omitted). She adds that the ALJ found that (i) the plaintiff's MS was stable, (ii) the plaintiff reported in August 2015 that he was walking more and doing well and could walk up to two miles a day, do the dishes, and care for his animals, and (iii) the plaintiff did not indicate, in a function report, that he had difficulty with concentration or completing tasks. *See id*. at 8.

However, the ALJ did not articulate most of those points as bases for discounting Dr. Kirkpatrick's assessed need for unscheduled breaks. "[A] reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker." *Belanger v. Berryhill*, No. 2:17-cv-00039-JHR, 2018 WL 1144389, at *3 (D. Me. Mar. 2, 2018) (citation and internal quotation marks omitted).

In any event, Dr. Kirkpatrick did identify support for the assessed limitation, attributing it to the plaintiff's muscle weakness and chronic fatigue. *See* Record at 374-75. That the plaintiff's MS was "stable" did not, in itself, undermine the Kirkpatrick limitation: as the plaintiff's counsel

---

walked, he typically walked for about a mile but would "walk a mile or two miles in the summertime a day." *Id*. at 78. Finally, he testified that he does not usually walk on "a bad day[.]" *Id*. at 80. The ALJ acknowledged Dr. Kirkpatrick's opinion that the plaintiff's "impairments were likely to produce 'good days' and 'bad days'" but did not address it. *Id*. at 28 (quoting *id*. at 376).

noted at oral argument, Dr. Kirkpatrick classified the plaintiff's MS as stable at a level encompassing chronic fatigue. Likewise, the plaintiff's reported ability to do dishes for half an hour once a week and to care for pets, *see id.* at 247-48, is not inconsistent with a need for unscheduled breaks. Nor, finally, can the plaintiff's lack of indication in his function report of difficulty with concentration or completing tasks, *see id.* at 251, fairly be read to undermine the Kirkpatrick limitation. In the same function report, the plaintiff also wrote that he had to rest for 10 minutes after walking a mile. *See id*.

In sum, the ALJ failed to supply good reasons as required by 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) for the weight afforded a treating physician's medical opinion that the plaintiff's symptoms of muscle weakness and chronic fatigue would require unscheduled breaks.

"[T]his court has held that, in circumstances in which a treating physician has offered a material opinion conflicting with the finding of an [ALJ], a failure to address [or supply good reasons for discounting] that opinion warrants remand." *Prior v. Colvin*, No. 16-cv-00237-DBH, 2016 WL 7441610, at *3 (D. Me. Dec. 26, 2016) (rec. dec., *aff'd* Jan. 13, 2017); *see also, e.g.*, *Soto-Cedeño v. Astrue*, 380 F. App'x 1, 4 (1st Cir. 2010) (vacating in part district court's affirmance of ALJ's decision on basis that "the ALJ did not give supportable reasons for rejecting [treating physician's] opinion as to [claimant's] ability to function in the workplace for the time frame the doctor had evaluated").

Dr. Kirkpatrick's opinion that the plaintiff required unscheduled breaks was material. A vocational expert present at the plaintiff's hearing gave testimony suggesting that such a limitation would preclude, or at least substantially erode, the base of available jobs:

Q   [W]hat kind of allowance is there for people being off task?

A   Actually, a customary tolerance would be no more than 10 to 12% either off task or below production requirement.

Q  And any allowance for a person to lie down . . . two times per work day?

A  Not typically. . . .

Q  So, with regard to ordinary breaks, what would the ordinary breaks be?

A  Sure. A typical schedule would be a 15-minute break after two hours, a half hour lunch [], and another 15 minutes after six hours.

Q  Um-hum. And so, if that's – that totals up to an hour all told.  If a person had their car in a parking lot, would there be a real push against them going out and you know, using that time to lie down and just have a little rest for a while?

A  They could if they could do it within that customary break period.  But that would typically be on a break.

Record at 91-92.

Because the ALJ failed to supply good reasons for rejecting Dr. Kirkpatrick's opinion that the plaintiff required unscheduled breaks as a result of MS-related muscle weakness and chronic fatigue, remand is warranted.

## II.  Conclusion

For the foregoing reasons, the commissioner's decision is **VACATED** and the case is **REMANDED** for proceedings consistent herewith.

Dated this 26th day of August, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge